**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TAMMY L. BENSON, | ) | CASE NO. CV 13-05529 RZ |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

In *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987), the Court of Appeals explained that "the rationale for giving greater weight to a treating physician's opinion is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual." (Citing *Murray v. Heckler*, 772 F.2d 499, 502 (9th Cir. 1983) and *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983).)  In this case, the Administrative Law Judge rejected the opinions of two treating physicians in favor of two testifying physicians, neither of whom ever had examined the plaintiff.  The Administrative Law Judge also misconstrued the testimony of the medical experts, and separated out the plaintiff's medical impairments, rather than considering them in combination.  Under the circumstances of this case, Plaintiff is entitled to an award of benefits.

There is no dispute that Plaintiff suffers from multiple sclerosis. Accompanying this disease, Plaintiff has a mental impairment which the Administrative

Law Judge classified as a mood disorder, not otherwise specified, with depressed and anxious features. [AR 24] Plaintiff also has a hearing loss in her left ear, and is morbidly obese, even after bariatric surgery. [*Id.*]

Sometimes multiple sclerosis is incapacitating; sometimes people can work while they have it. Plaintiff's treating physicians thought that Plaintiff could not work, given her infirmity. Her long-time treating physician, Dr. John Sharpe, twice gave opinions as to the extent of Plaintiff's ability to function with her disease. In 2007, he opined that Plaintiff could sit for an hour or less in an eight hour day, and stand or walk for an hour or less; that she would have to frequently get up and move around and could not continuously stand or walk in a work setting; that her lifting and carrying capacities were quite limited; that she had moderate limitations in her ability to grasp, turn or twist objects and in using her fingers and hands for fine manipulations ("holding a pencil," for example, "is difficult") and in using her arms for reaching, that her symptoms would likely increase if she were in a competitive work situation, and that she was incapable of tolerating even low stress. [AR 779-82] He reiterated these limitations in an opinion in 2011. [AR 1118-20]

The Administrative Law Judge, however, found a different capacity:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for standing/walking a total of 2/8 hours. The claimant can sit 8/8 hours. She could occasionally climb stairs and never climb ladders, ropes or scaffolds. She could occasionally bend, stoop, kneel, crouch or climb and cannot balance. The claimant could not work around unprotected heights, or around dangerous machinery, or in temperature extremes. She should work in a climate-controlled office and cannot be exposed to dust, fumes, gases or noise. Due to her affective disorder, the claimant was

>limited to do doing [sic] moderately complex tasks of up to three to five tasks and should not be in charge of safety operations of others or where hypervigilence [sic] was required. Interactions with coworkers, public or supervisors were unimpaired other than a limitation not to no intrusive supervision. [sic] The claimant should not work in an environment with intrusive supervision or where high quota production or rapid assembly line work are required. She cannot handle more than a moderate level of stress.

[AR 29] In reaching this conclusion, the Administrative Law Judge gave "great weight to the physical portion of the above residual functional capacity that were [sic] proposed by Dr. Landau." [AR 32] Dr. Landau was a medical expert who never examined Plaintiff, but reviewed the records and testified as to them. A medical expert during the hearing can clarify the record for the Administrative Law Judge, for an administrative law judge is not a doctor and cannot herself make medical determinations. *See, e.g., Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975). In those situations where the record needs interpreting, the Administrative Law Judge can rely on an expert for such interpretation. Thus, when the record does not contain a physician's statement as to a claimant's residual functional capacity, it is appropriate — indeed necessary — to consult a medical expert, for the very reason that an administrative law judge is not qualified to make that determination himself. *See Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996).

Unlike in *Manso-Pizarro*, however, here the record *did* contain an expert's evaluation of Plaintiff's residual functional capacity, that of Dr. Sharpe. Thus, the function of the medical expert was not to supply something that was missing from the record. Rather, the medical expert *disagreed* with what was in the record. The medical expert gave an independent opinion of Plaintiff's functional ability [AR 117-18], and the

Administrative Law Judge explicitly relied on the expert's opinion. This was error. The Ninth Circuit has established that the opinion of a medical expert who does not examine a claimant cannot alone stand as substantial evidence. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996).

In this Court, the Commissioner only briefly relies on the lineage of the Administrative Law Judge's residual functional capacity, however. Mostly, the Commissioner argues that the medical expert's testimony showed how Dr. Sharpe's opinion was incorrect. (Defendant's Memorandum at 2.) But even this is not what Dr. Landau said; rather, he said that Dr. Sharpe's records do not show objective evidence that would satisfy the Listing for multiple sclerosis [AR 116]. Whether a Listing was met is not an issue in dispute in the present litigation. The Commissioner and Plaintiff argue over whether the record contains evidence of various symptoms of multiple sclerosis and, although Plaintiff has the better of the argument, the argument is really beside the point; everyone agrees that Plaintiff has MS. The opinions by Dr. Sharpe as to Plaintiff's functionality have backing, in that they reference various MRI's, consultations with specialists, and observations of Plaintiff that would be expected from a treating relationship. Some of the information, of course, had to come from Plaintiff herself, such as the level of her fatigue. This is to be expected for a symptom that cannot be measured. *Cf. Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

The Commissioner also argues that the Administrative Law Judge properly disregarded Dr. Sharpe's opinion because Dr. Sharpe's progress notes did not support his opinion. When the Administrative Law Judge said this, he did not identify those notes that were inconsistent with Dr. Sharpe's opinion. [AR 32] In this Court, the Commissioner points to various records that largely concern visits to Dr. Sharpe for matters other than Plaintiff's multiple sclerosis. That is not a basis upon which to justify the statement that Dr. Sharpe's opinion is not to be trusted because it is inconsistent with his progress notes.

When asked by the Administrative Law Judge if he knew "where Dr. Sharpe comes up with the opinion that Ms. Benson is disabled," Dr. Landau demurred, mentioning

that Dr. Sharpe cited psychiatric issues as well as physical ones, and that he, Dr. Landau did not take those into consideration. [AR 117] The Administrative Law Judge then prompted Dr. Landau — "But he's not a psychiatrist; he has no mental, mental health qualifications to, to your knowledge, correct?" — to which Dr. Landau responded "Not to my knowledge." [AR 117] In *Sprague*, *supra*, however, the Court of Appeals made clear that a physician who is not a psychiatrist nevertheless is qualified to give an opinion as to his patient's mental state, and that, in fact, primary care physicians identify and treat the majority of psychiatric disorders. *Sprague*, 812 F.2d at 1232. Moreover, it would be surprising if a treating physician would *not* take into account *all* of a patient's infirmities, whether within his expertise or not, whether he was the one who had diagnosed them or whether he relied on others to do so. Indeed, that is the charge for the Commissioner as well — to consider impairments not in isolation — physical as opposed to mental, for example — but in combination. *Marci v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996)

As she had done in establishing a residual functional capacity for Plaintiff's physical abilities, the Administrative Law Judge relied heavily on the testimony of another non-examining medical expert, Dr. Rath, to establish components of Plaintiff's mental capacity. [AR 33] According to the Administrative Law Judge, Dr. Rath proposed that Plaintiff would be limited to three to five step moderately complex tasks, should not have intensive supervision, and could handle a moderate level of stress in the workplace. [*Id.*] The Administrative Law Judge also stated that Dr. Rath had noted that Plaintiff admitted to feeling better on medications. [AR 34]

Dr. Rahmin, the treating mental health professional, however, stated his opinion that Plaintiff was incapable of even low stress, because, even with low stress, she gets very agitated and angry. [AR 668] Dr. Rahmin also stated his opinion that, while Plaintiff was mildly limited in her ability to carry out simple one or two step instructions, she was markedly limited in her ability to carry out detailed instructions. [AR 665] These two points appear to be the differences in terms of what the Administrative Law Judge found to be Plaintiff's mental capacity. As noted, the Administrative Law Judge based her

decision on the opinion of Dr. Rath, who had never examined Plaintiff. (The Administrative Law Judge also rejected the opinion of Dr. Rahmin on the grounds that "the record does not *entirely* support Dr. Rahmin's functional assessment," [AR 35, emphasis added], a curious basis for rejecting the entire opinion.)

The extent of stress that a patient can tolerate is exactly the sort of opinion that is more appropriate for a treating physician to make than a non-examining physician. A physician who has seen a patient over time, who has witnessed first-hand her anxiety and mood swings, has seen her crying and angry, and has tried first one medication and then another in an attempt to address her symptoms, is in a far better position to assess stress tolerance than is a physician who has never laid eyes upon the patient until the day of the hearing. A patient's ability to tolerate stress is a judgment call, and judgment calls are better given to treating physicians.

As for the ability to carry out complex tasks, Dr. Rath did not give a basis for his opinion; he simply listed what a number of the records stated. [AR 121-25] On the other hand, the record did show that Plaintiff had the mathematic capability of a fifth grader and the reading capability of an eleventh grader [AR35] and, here too, it may be that there was overlap with Plaintiff's other symptoms, such as anxiety.

Moreover, it should also be noted that Dr. Rath expressly stated that he was not evaluating Plaintiff as the total person, even though he recognized a significant physical component underlying Plaintiff's mental state, but rather was trying to tease out Plaintiff's mental limitations. [AR 126] And Dr. Rath also acknowledged that, with flare-ups of multiple sclerosis, matters of mental capacity would be adversely affected. [*Id.*][1]

---

[1] As noted, the Administrative Law Judge also referenced the statement that Plaintiff improved with medication, attributing this to Dr. Rath's review of the records. [AR 34] Later, the Administrative Law Judge stated that "Evidence of good control with medication comes from a December 2007 note that the claimant had fewer mood swings since starting Seroquel. (Exhibit 19F/10)" [AR 34] Dr. Rath, however, noted that Seroquel was contributing to Plaintiff's vertigo, [AR 122], which hardly seems like good control with medication. The Court cannot sustain the discrediting of a treating physician on the basis that medications improved the claimant's
(continued...)

Plaintiff also challenges the Administrative Law Judge's credibility findings. The Administrative Law Judge said:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

[AR 30] This language is formulaic; it appears in every decision the Court has reviewed for the last several years. It is also insulting to the Courts. How can it be, that in every case, the claimant is not believable, and not believable "to the extent" that the claimant's statements "are inconsistent with the above residual functional capacity assessment."?

Case law requires the Administrative Law Judge to identify what testimony is credible and what testimony undermines the claimant's complaints. *Lester v. Chater*, 81 F.3d 821, 834(9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). The Administrative Law Judge here mentioned several items, but gave no indication of how any of them showed that Plaintiff was credible — but only to the extent that she described conditions consistent with the Administrative Law Judge's residual functional capacity — and incredible otherwise.

First, she stated that Plaintiff quit her employment two years before she was diagnosed with MS, which, the Administrative Law Judge said, suggested that Plaintiff could have worked for two more years but was not motivated to do so. [AR 30] The Court

---

[1](...continued)
symptoms, when the medical expert himself states otherwise.

does not understand how this assertion undermines Plaintiff's credibility as to her functional capacity once she *was* diagnosed.

Second, the Administrative Law Judge referred to Plaintiff's activities of daily living. [*Id.*] The Administrative Law Judge acknowledged, however, that Plaintiff's activities were "somewhat compromised by physical and mental impairments;" still, she went on to enumerate activities that Plaintiff could perform, such as "some gardening," household tasks with help from her husband, taking care of pets, driving, walking regularly and taking her in-laws places. The fact that the Administrative Law Judge acknowledged that Plaintiff's activities were compromised makes the listing of what Plaintiff *could* do unpersuasive if meant as a basis for discrediting Plaintiff. As the Ninth Circuit recently has summarized, "we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.'" *Garrison v. Colvin*, ___ F.3d ___, 2014 WL 3397218 at * 17 (9th Cir. July 14, 2014), quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Third, the Administrative Law Judge stated that Plaintiff's noncompliance with her medications reduced her credibility because the records did not indicate "adverse effects such as increased muscle weakness, decreased sensation or impaired gait." [*Id.*] The Court is a little perplexed as to how this is a credibility issue. The Administrative Law Judge does not doubt that Plaintiff *has* MS, because she found that she did, so the absence of medications does not speak to that issue. Likewise, the Administrative Law Judge does not point to any testimony from Plaintiff that she had the identified increased symptoms when she went off the medications, such that the medical records might impeach *that* statement. There is no reason that is identified that the absence of the medications indicates that Plaintiff has a greater ability to function than she said she did.

Fourth, the Administrative Law Judge found that Plaintiff continued to smoke despite being urged to quit. [AR 30-31] Chronic smokers often have a tough time quitting. The Administrative Law Judge did not explain how that made Plaintiff less believable.

Fifth, the Administrative Law Judge stated that Plaintiff had not shown any interest in doing anything that would cause her to lose weight. "Her unwillingness to control weight despite her weakened body," the Administrative Law Judge stated, "is inconsistent with her allegations of difficulties with mobility." [AR 31] The Court assumes that the Administrative Law Judge means that, if Plaintiff really wanted to be more mobile, she would lose weight and, since she has not lost weight, she must really not want to be more mobile. If this is the meaning, it surely does not reflect an understanding of human nature; for obese people, losing weight is not merely a question of will, and a person, like Plaintiff, who has had bariatric surgery pretty clearly wants to lose weight.

None of these reasons is a "clear and convincing" reason, *Garrison v. Colvin, supra* at *16, for disbelieving Plaintiff's testimony as to her remaining capacity to function.

*Garrison v. Colvin, supra*, instructs courts to credit as true the opinions of the treating physicians, and the testimony of the Plaintiff, in circumstances like these. The Court has reviewed the record, including the testimony at both hearings from the vocational experts and it is clear that, if the treating physicians opinions and Plaintiff's testimony are credited as true, that Plaintiff is disabled. Accordingly, Plaintiff is entitled to receive benefits.

The decision of the Commissioner is reversed, and the matter is remanded to the Commissioner for the calculation and payment of benefits.

IT IS SO ORDERED.

DATED: July 24, 2014

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE